UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 23-mj-157 ZMF |
| : | |
| PHILLIP CRAWFORD : | |
| : | |
| Defendant. : | |

GOVERNMENT'S MEMORANDUM
IN SUPPORT OF REVOCATION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its motion that the defendant, Phillip Crawford, be detained following revocation of his release pursuant to 18 U.S.C. § 3148(b). This Court has ordered a hearing on the government's motion to occur on December 8, 2023.

I. **Statement of Law**

Revocation hearings have two separate phases. First, this Court must consider whether there is probable cause a person committed a crime or: "that there is – (B) *clear and convincing evidence* that the person has violated *any other condition of release*." 18 U.S.C. § 3148(b)(1)(B) (emphasis added). After this first phase, this Court must then consider either, "there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community," or that "the person is unlikely to abide by any condition or combination of conditions of release." 18 U.S.C. § 3148(b)(2)(A)-(B). Once each phase has been established, the Court then "shall enter an order of revocation and detention . . .." 18 U.S.C. § 3148(b).

**II.     There is clear and convincing evidence Mr. Crawford violated a condition of release.**

Mr. Crawford's release was conditional. He was ordered to "submit to supervision by and report for supervision to the . . . Pretrial Services-Northern District of Georgia/Atlanta." ECF 09, p. 2 ¶ 7(a). Further, Mr. Crawford was ordered to "participate in . . . **Home Detention**." ECF 09, p. 2 ¶ 7(p)(ii) (emphasis in original). This condition is further explained as: "You are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or *other activities approved in advance by the pretrial services office or supervising officer*." *Id*. (emphasis added). In the present case, Mr. Crawford, and his supervising agent, signed a more robust agreement detailing how this condition would be effectuated. *See* Government Exhibit 100.

Clear and convincing evidence, "requires the trier of fact, in viewing each party's pile of evidence, to reach a firm conviction of the truth on the evidence about which he or she is certain." *United States v Montague*, 40 F.3d 1251, 1255 (D.C. Cir. 1994). To enforce this Court's condition, Mr. Crawford was placed on a GPS tether.

In supervising Mr. Crawford, Pretrial Services would facilitate the advance approval of "other activities" by providing a "Daily Activity Form." *See* Government Exhibit 101. Pretrial Services required these forms to be emailed the Friday before the following week in order to approve the "other activities" being requested.

On November 2, 2023, Mr. Crawford requested that on November 7th, he be allowed at a school, Home Depot, a job site, and FedEx Freight. Mr. Crawford requested that on November 10th, he be allowed at a school, and Flex Storage. On both November 7th and 10th, Mr. Crawford went to Tractor Supply without preapproval. *See* Government Exhibit 102.

On November 9, 2023, Mr. Crawford requested that on November 16th, he be allowed at two schools, a job site, and Home Depot. *See* Government Exhibit 101. But on November 16, 2023, Mr. Crawford was at two different locations not listed. *See* Government Exhibit 103. On November 16, 2023, Mr. Crawford requested that on November 21st, he be allowed at "VM Granite Solutions," "E&E General Merchandise," a job site, and Flex Storage. But on November 21, 2023, Mr. Crawford also went to Regions Bank. *See* Government Exhibit 104.

### III. Mr. Crawford is unlikely to abide by any condition or combination of conditions of release.

"[D]istrict courts would be well advised to state the standard of proof being employed on the record in future circumstances." *United States v Manafort*, 897 F.3d 340, 344 n.1 (D.C. Cir. 2018). "The language of the Bail Reform Act reflects that § 3142 and § 3148 provide quite different avenues to detention before trial . . .. Accordingly, we hold that findings made under section 3148(b)(2) may be established by a preponderance of the evidence." *United States v Gotti*, 794 F.2d 773, 778 (2d Cir. 1986).

Mr. Crawford's current release conditions were imposed following a tense 29-minute stand off with FBI agents effectuating his arrest. Agents used sirens, bullhorns, and lights to have Mr. Crawford surrender peacefully. At one point early in the stand-off, Mr. Crawford exited his house, yelled obscenities while giving agents the finger, and then returned into his home. Agents were eventually able to make contact with Mr. Crawford over the telephone. *See* Government Exhibit 105. The negotiation led to Mr. Crawford finally coming out the house. *See* Government Exhibit 106.

Although Mr. Crawford came out of the house, he continued to yell at agents and resist their efforts to safely cuff and transport him. At one point Mr. Crawford explained "I'm the only one in the right here!" Mr. Crawford's view of this process has not changed since his arrest.

On July 22, 2023, Mr. Crawford walked to a neighbor's house without authorization, he was contacted and instructed he cannot do that. On August 8, 2023, Mr. Crawford briefly left the Northern District of Georgia and crossed into Alabama. On August 14, 2023, Mr. Crawford left his residence an hour before he was authorized to. During Pretrial Services's contact with Mr. Crawford, Crawford again explained that Pretrial Services is the bad guy and Mr. Crawford is the good guy.

On August 30, 2023, Mr. Crawford returned home 25 minutes late. When Pretrial Services contacted Mr. Crawford, Mr. Crawford stated that he had forgotten his keys. On October 3, 2023, Pretrial Services conducted a home visit. Mr. Crawford told Pretrial Services that he had researched the location monitoring equipment and that he could "probably remove it without [Pretrial Services] knowing." Pretrial Services then reviewed location data from the week before and noted that Mr. Crawford travelled along a powerline and a creek on property he was not authorized to visit. Further, that Mr. Crawford had travelled into a wooded area and spent nearly 2 hours there. *See* Government Exhibit 107.

On October 3, 2023, Mr. Crawford had a scheduled status conference before this Court. United States Magistrate Judge Moxila A. Upadhyaya presided over the status conference and admonished Mr. Crawford for the violations of his conditions of release. Judge Upadhyaya requested Mr. Crawford re-swear that he would abide by his conditions. Mr. Crawford did, but the same behavior has continued.

The violations of November 7th, 10th, 16th, and 21st, have occurred since the admonishment from this Court and Pretrial Services. But also on November 14th, and November 20th, Mr. Crawford's monitor became so dirty as to interfere with its capability. These "nuisance alerts" occurred at 9:30 p.m., and 1:20 a.m., respectively. After both instances, Mr. Crawford

took his equipment to the Atlanta office where it was cleaned. Mr. Crawford was instructed to protect the equipment after each of these instances.

Not until the November 21, 2023, violation did Mr. Crawford contact Pretrial Services about deviating from his daily activity sheet. On that day, Mr. Crawford texted Pretrial Services that he had gone to the bank. Pretrial Services explained that his was now 5 unapproved stops in November. Mr. Crawford responded: "I'm just going home and getting in bed. And everything can go to hell. My house my bills and my business and everything I own. I'm done. I want even [sic] leave the house. Better off dead or in jail." *See* Government Exhibit 108.

Pretrial Services reported these violations to the Court on November 24, 2023. ECF 12. The government filed its motion to revoke release on November 24, 2023. ECF 13. In the present case, Mr. Crawford is unlikely to abide by any condition by a preponderance of the evidence and his pretrial release should be revoked.

**IV.     Alternatively, there is no condition or combination of conditions of release that will assure the person will not pose a danger to the safety of any other person or the community.**

Alternatively, this Court may look to "the factors set forth in section 3142(g) of this title," to determine whether "there is no condition or combination of conditions of release" that could be imposed. 18 U.S.C. § 3148(b)(2)(A). This Court "may amend the conditions of release" if it "finds that there are conditions or release that will assure that the person will not . . . pose a danger to the safety of any other person or the community." 18 U.S.C. § 3148(b).

The statutory factors that are outlined in 18 U.S.C. § 3142(g) are:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1691, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;

5

> (3) the history and characteristics of the person, including—
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

Soon after January 6, 2021, § 3142 was interpreted in *United States v Chrestman*, 525 F.Supp.3d 14 (D.D.C. 2021). The factors outlined by Judge Beryl A. Howell, "[t]aken together, as applied to a given defendant, . . . are probative of 'the nature and circumstances of the offense charged, 18 U.S.C. § 3142(g)(1), and, in turn, of the danger posed by the defendant . . .." *United States v Chrestman*, 525 F.Supp.3d 14, 27 (D.D.C. 2021) (Howell J.). Judicial Officers in this district have continued to use the *Chrestman* factors in interpreting detention decisions specifically in the January 6 context. *See*, *e.g.*, *United States v Matthew Krol*, 642 F.Supp.3d. 28 (D.D.C. 2022) (Contreras, J.).

> These relevant factors are: (1) whether the defendant has been charged with felony or misdemeanor offenses; (2) the extent of the defendant's prior planning; (3) whether the defendant used or carried a dangerous weapon; (4) evidence of coordination with other protestors before, during, or after the riot; (5) whether the defendant

6

> assumed a formal or de facto leadership role in the events of January 6, 2021, . . . and (6) the defendant's "words and movements during the riot"—*e.g.*, whether the defendant 'remained only on the grounds surrounding the Capitol' or stormed into the Capitol interior, or whether the defendant "injured, attempted to injure, or threated to injure others."

*United States v Whitton*, 534 F.Supp.3d 32, 41 (D.D.C. 2021) (Sullivan J.).

Mr. Crawford faces felony charges for his actions on January 6, 2021. Mr. Crawford was recorded giving a pep talk to other rioters before he charged up to the Lower West Terrace Tunnel and attacked fully uniformed police officers. *See* Government Exhibit 109. While in the tunnel, Mr. Crawford indiscriminately threw fists at the line, grabbed an officer in an attempt to pull him out, and picked up a gas mask and double fist threw it at the line. *See* Government Exhibit 110. Each of the *Chrestman* factors weigh against Mr. Crawford's release.

This Court must also consider the weight of evidence against Mr. Crawford, and in the present case the weight is overwhelming. Mr. Crawford's assaultive behavior is captured on surveillance cameras, body-worn cameras, and cameras from other rioters. Further, Mr. Crawford himself told agents of the righteousness of his actions during his arrest, and fully admits he was present at the Capitol on January 6, 2021.

Also, this Court must consider the history and characteristics of Mr. Crawford. Mr. Crawford has three prior convictions, and seven prior arrests. ECF 06 p. 1. Although the most recent conviction is from 15 years ago, they do show that at one time Mr. Crawford obstructed officers and violated probation.

Finally, this Court must consider the nature and seriousness of the danger posed to any other person and the community. From Mr. Crawford's history, his actions on January 6, 2021, and his actions during and since his arrest, outline that he does not have respect for the law. He has been convicted of lying to police, convicted of violating probation, accused of forcibly

assaulting police, and has continued to be uncooperative with law enforcement and Pretrial Services. When weighing the statutory factors of § 3142(g), this Court should find there is no condition or combination of conditions that will reasonably assure the safety of the community.

V. **Conclusion**

This Court should find by clear and convincing evidence that Mr. Crawford violated a condition of his release. Further, this Court should find by a preponderance of evidence that Mr. Crawford is unlikely to abide by any condition of release and enter an order of revocation and detention pending trial.

                    Respectfully submitted,

                    MATTHEW M. GRAVES
                    United States Attorney
                    D.C. Bar No. 481052

Date: December 2, 2023              /s/ *Adam M. Dreher*
                    ADAM M. DREHER
                    Assistant United States Attorney
                    Michigan Bar No. P79246
                    601 D. St. N.W.
                    Washington, D.C. 20530
                    (202) 252-1706
                    adam.dreher@usdoj.gov